[Crim. No. 5524.   First Dist., Div. One.   Mar. 7, 1966.]

In re Ralph E. Boches on behalf of ANDRE MACIDON, a Minor, on Habeas Corpus.

Ralph E. Boches, E. Myron Bull, R. Jay Engel, and Joel Goldfarb for Petitioner.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Derald E. Granberg, Deputy Attorneys General, for Respondent.

SIMS, J.—On January 31, 1966, a petition for a writ of habeas corpus was filed on behalf of Andre Macidon, sometimes referred to as Andre Macedon, a minor, by one of his attorneys at the request of the minor and his mother. The petition sought the release of the minor from detention which had been ordered pending a hearing in the juvenile court on charges which had been filed against him. █ The issues raised by the petition and the facts bearing thereon as revealed

by the declarations filed in support of the petition, the transcript of the proceedings at the detention hearing, and the return filed on behalf of the respondent probation officer are herein discussed:

"(a) The detention hearing was sought by the Probation Officer despite the fact that the Probation Officer failed to find that any detention of the minor was required under any of the standards set forth in Welf. & I.C. § 628 and solely because of coersion [*sic*] practiced by the Judge of the Juvenile Court on the Chief Probation Officer contrary to the letter and spirit of the Juvenile Court Law."

It is uncontroverted that on July 8, 1965, the judge presiding in the juvenile court issued a memorandum to the chief probation officer in which he ordered that a detention hearing be held on every juvenile charged with a felony regardless of whether the juvenile was in custody or had been released.[1]

The following day the chief probation officer in writing directed his supervising probation officers to comply with this directive.

The police report of the incident of December 17, 1965, a copy of which is incorporated in the return of respondent reflects, as stated in the return, "that the victim, a 12-year old girl, while walking home from school was surrounded by the five suspects who started to grab her about the body, who used vulgar language, and who stole her purse from her. She broke away from them, ran to her home and reported the incident to her brother who apprehended one of the suspects and recovered part of the loss. The report indicates that ap-

---

[1]This memorandum reads as follows: "Would you issue the following order to all affected personnel implementing Order No. 6 under date of April 27, 1965. (1) The Probation Staff are advised that where juveniles are booked on felony charges by the police or any law enforcement agency a petition shall be filed against them on the felony charges referred to in the prior order and a date set for detention hearing before the court. In the event felony charges are brought against a juvenile without the juvenile having been booked a petition on such charges shall likewise be filed against said juvenile and the detention hearing date set before the court. (2) Hereafter where more than one juvenile is charged with the commission of the same felony charge [*sic*], including Section 499B of the Penal Code, not only shall all juveniles be tried in the same hearing before the court or a referee but the probation officers involved shall confer before the hearing and properly prepare the case for hearing. Proper preparation includes the production of all witnesses including the arresting police officer, if any, the police record of the juvenile or juveniles involved and the school record of the juvenile or juveniles involved. The court, the referees, the community and the juveniles involved are entitled to a full and fair representation of all facts pertinent to any offense charged. Failure to observe these rules would constitute a dereliction of duty against those charged with the presentation of the case."

parently the victim was not injured but that she was badly frightened by the incident.'' The return fails to state that the report further shows that the minor who was apprehended is the minor who is the subject of these proceedings, and that the victim's brother recovered part of the loss, not from this minor, but from a woman neighbor in the area. The report expressly recites that this minor ''readily admitted being at the scene of the incident and admitted he tried to escape with his friends. [He] gave names of all the other suspects, although he denied taking part in the incident itself.''

It is alleged and not controverted that subject minor was released to his mother by the police on December 17, 1965, when she signed a citation for his appearance before the probation officer to answer charges of violation of section 487 of the Penal Code (grand theft), and that during the last week in December the minor and his mother appeared before a deputy probation officer who reviewed the facts and left the minor in the custody of his mother.

On January 22, 1966, the mother was advised orally that a detention hearing would be held on January 25th. On January 24th a petition was executed and filed which alleged that the minor comes within the provisions of section 602 of the Welfare and Institutions Code in that on December 17, 1965, in violation of section 487 of the Penal Code, he stole the victim's purse. It expressly recites that the minor has not been detained. A copy of this petition, together with a notice of hearing February 10, 1966, and written advice of the right to have an attorney present at that hearing, were served on the minor's mother on January 25th. A request for detention was executed on January 24th by the same deputy probation officer who had interviewed the minor and his mother in December. It alleges, ''Said minor is/are in the temporary custody of the Probation Officer and has/have been in Juvenile Hall since NOT , 19 at a.m./p.m. . . .

''Said custody and detention are matters of immediate and urgent necessity for the protection and welfare of said minor . . . and should be continued for the following reasons:

'' . . . . . . . . . .

''X for the protection of the person or property of another and the community.''

Petitioner contends that the directive first referred to and certain alleged admissions of the deputy probation officer who signed the request for detention demonstrate that the

discretion contemplated by sections 628 and 630 of the Welfare and Institutions Code[2] was not exercised prior to the filing of the request, and that the detention hearing was coerced by the judge's directive. The deputy probation officer in his declaration filed as part of the return to the order to show cause has controverted some of the remarks attributed to him, and the conclusions drawn therefrom on behalf of the petitioner. He did not, however, set forth any facts upon which he predicated the conclusions embodied in the printed form for request for order of detention which he adopted over his signature. It is unnecessary to resolve the disputed facts in this regard, because as is set forth below, the detention order is invalid for total lack of any evidentiary support. Left for future determination is the question of whether or not the court can order detention in any matter (other than a case commenced under the provisions of section 655)[3] where the minor is not first detained pursuant to the provisions of sections 626-627 and 628-630.[4]

---

[2]Welfare and Institutions Code section 628 provides: "Upon delivery to the probation officer of a minor who has been taken into temporary custody under the provisions of this article, the probation officer shall immediately investigate the circumstances of the minor and the facts surrounding his being taken into custody and shall immediately release such minor to the custody of his parent, guardian, or responsible relative unless it appears that further detention of such minor is a matter of immediate and urgent necessity for the protection of such minor or the person or property of another, or unless it appears that such minor is likely to flee the jurisdiction of the court, or unless it appears that such minor has violated an order of the juvenile court."

Welfare and Institutions Code section 630 provides: "If the probation officer determines that the minor shall be retained in custody, he shall immediately file a petition pursuant to Section 656 with the clerk of the juvenile court who shall set the matter for hearing on the detention hearing calendar. The probation officer shall thereupon notify a parent or guardian of the minor of the time and place of such hearing. Such notice may be given orally."

All further references are to sections of the Welfare and Institutions Code unless otherwise noted.

[3]Section 655 provides for institution of proceedings by an aggrieved person where the probation officer has refused to act.

[4]It is conceivable that after the accused has been released either by the police pursuant to the provisions of section 626, or by the probation officer under the terms of sections 628-629, that new circumstances may arise, or facts theretofore unknown may be discovered which bring the accused within the class of those who may and should be detained. Nothing herein is intended to preclude the probation officer from taking the accused into custody and instigating detention proceedings in such cases. In this case, however, it nowhere appears, nor has it been suggested that anything arose or was discovered between the accused's arrest and release and the subsequent making of the detention order, upon which the detention can be predicated.

█ "(b) The minor was denied due process of law at the detention hearing because the court failed to examine the minor and his mother, as required by Welf. & I. C. § 635."

Section 635 provides: "The court will examine such minor, his parent, guardian, or other person having relevant knowledge, hear such relevant evidence as the minor, his parent or guardian or their counsel desires to present, and, unless it appears that such minor has violated an order of the juvenile court or has escaped from the commitment of the juvenile court or that it is a matter of immediate and urgent necessity for the protection of such minor or the person or property of another that he be detained or that such minor is likely to flee the jurisdiction of the court, the court shall make its order releasing such minor from custody."

The transcript reflects that the judge asked the minor his name, age and the school which he attended, and that he ascertained from his mother that she was present. No questions were asked of the deputy probation officer who ostensibly represented this minor, and the court apparently predicated its decision to detain the minor on the material contained in the police report and a statement made by the probation officer for two of the five youths charged with the offense. The decision was pronounced without request for explanation or comment from the youths or their parents.

The failure to carry out the mandate of that portion of the section in question can hardly be considered jurisdictional. If evidence was adduced to support a finding of any of the facts upon which detention must be predicated, an attack on the failure to give a full hearing would undoubtedly be dependent on the showing made of the effort to bring relevant facts before the court. (See *In re Mikkelsen* (1964) 226 Cal. App.2d 467, 471 [38 Cal.Rptr. 106].) This case, nevertheless, demonstrates the desirability of individual interrogation on the issues posed by section 635.[5] (See *In re Brodie* (1917) 33 Cal.App. 751, 752 and 753-754 [166 P. 605].)

---

[5]The requests for detention in connection with the other youths are not before this court. The transcript reflects that one already was a ward of the court, and two were on formal probation for prior offenses. All three, therefore, were subject to detention for violation of prior orders of the juvenile court if engaged in unlawful conduct, and also might be considered more dangerous to society by reason of their recidivism. The probation officer for the two on formal probation stated that they admitted complicity in the stealing and that by their statements they implicated the ward of the court, and the fifth boy about whose record nothing appears.

■ "(c) The minor was denied due process of law at the detention hearing because the Court did not advise him of his right to counsel as required by Welf. & I. C. § 633."

The day after filing his petition, petitioner formally withdrew this point and elected to waive it as an allegation of error. It does not appear whether or not the minor or his mother was advised of the right to have an attorney present at the detention hearing. (See §§ 633 and 634.) The advice in the notice of the hearing on the merits, and the remarks of the judge at the detention hearing, both of which referred to the right to have an attorney at the hearing on the merits, do not satisfy this requirement.

■ "(d) The evidence presented at the detention hearing failed to provide any basis whatsoever for detaining the minor pursuant to Welf. & I. C. § 636."

Section 636 provides as follows: "If it appears upon the hearing that such minor has violated an order of the juvenile court or has escaped from a commitment of the juvenile court or that it is a matter of immediate and urgent necessity for the protection of such minor or the person or property of another that he be detained or that such minor is likely to flee the jurisdiction of the court, the court may make its order that such minor be detained in the juvenile hall or other suitable place designated by the juvenile court for a period not to exceed 15 judicial days and shall enter said order together with its findings of fact in support thereof in the records of the court."

At the detention hearing the court had before it the police report, which has been summarized in connection with point "(a)." From it notice was given that the minor had been released by the arresting officer to appear before the probation officer on December 30, 1965. The request for detention contained the declarations set forth in part "(a)" above and reflected that the minor had not been detained by the probation officer. The evidence and statements taken by the court have been reviewed under point "(b)."

Respondent seeks to justify the order on the ground that the foregoing constituted sufficient evidence to support a finding "that it is a matter of immediate and urgent necessity for the protection of such minor or the person or property of another" that the minor be detained.

■ The conclusionary ultimate facts set forth in the probation officer's request for an order of detention and the court's conclusionary finding that detention was "necessary

and proper," might preclude further inquiry if a remedy by appeal were available. (See *In re Brodie, supra,* 33 Cal.App. 808; and *In re Gutierrez* (1920) 46 Cal.App. 94 [188 P. 1004].) There is no provision for an appeal from an order of detention (§ 800; and see *In re Corey* (1964) 230 Cal. App.2d 813, 820-822 [41 Cal.Rptr. 379]); and in any event it would be an inadequate remedy because the permitted 15-day period of detention would expire before relief could be obtained. It is, therefore, proper to review the proceedings to determine whether in fact evidence was presented to sustain the allegations of the request and the implied finding of the court. (See *In re Edwards* (1930) 208 Cal. 725 [284 P. 916]; *In re Singer* (1955) 134 Cal.App.2d 547 [285 P.2d 955]; *In re Tahbel* (1920) 46 Cal.App. 755 [189 P. 804]; and cf. *In re Martinez* (1940) 36 Cal.App.2d 687-689 [98 P.2d 528]; and *In re Williams* (1921) 52 Cal.App. 566, 568-569 [199 P. 347].)

██ "The principal of substantial evidence is applicable in juvenile court proceedings as in other matters. [Citation.] Accordingly, the findings of the juvenile court judge will not be disturbed on appeal where there is substantial evidence to support them. [Citations.]" (*In re Corey, supra,* 230 Cal. App.2d 813, 824; and see *In re Corrigan* (1955) 134 Cal. App.2d 751, 754 [286 P.2d 32]; *In re Steiner* (1955) 134 Cal. App.2d 391, 394 [285 P.2d 972].) ██ Nevertheless detention cannot be upheld when there is no evidence of any ground which the law requires as a condition precedent. (*In re Edwards, supra,* 208 Cal. 725, 733-734 and 736; *In re Singer, supra,* 134 Cal.App.2d 547, 550-551; *In re Tahbel, supra,* 46 Cal.App. 755, 759 and 763.) ██ On appeal an order of wardship must be set aside if there is no evidence to show grounds therefor. (*In re Contreras* (1952) 109 Cal.App.2d 787, 791 [241 P.2d 631]; *In re Rauch* (1951) 103 Cal.App.2d 690, 696 [230 P.2d 115].) ██ The failure to receive evidence in regard to the disposition to be made of one declared to be a ward (§§ 702 and 706), is a denial of due process of law (*In re Mikkelsen, supra,* 226 Cal.App.2d 467, 471); and the lack of evidence or findings to support grounds on which a minor who has been found to be a ward may be removed from the custody of his parents (§ 726, formerly § 739; and Stats. 1915, ch. 631, § 9*b*) necessitates the reversal of such an order. (*In re Batey* (1960) 183 Cal.App.2d 78, 80-81 [6 Cal. Rptr. 655]; *In re Pierce* (1932) 127 Cal.App. 773, 775-778 [16 P.2d 765]; *In re Brodie, supra,* 33 Cal.App. 751, 753-

754; and see *In re Edwards, supra,* 208 Cal. 725, 731-733.)

The record in this case reflects that insofar as the minor, the subject of these proceedings, is concerned there is no evidence to show that he falls within any of the categories of section 636. In the absence of·any evidence to the contrary it must be assumed that the officer who made the arrest determined that it was "compatible with the best interests of the minor and the community" to release him to his mother on December 17, 1965, upon securing a promise for their future appearance before the probation officer (§ 626); and that on December 30, 1965, when they appeared in response to the citation, the probation officer did not find that any of the grounds for detention existed (§ 628 and cf. § 636). The information elicited from the boy and his mother shed no light on these fundamental questions, and one searches in vain through the statements of the others who spoke at the detention hearing for any mention of this juvenile. Reference to the police report reflects that he was apprehended by the victim's brother, turned over to the officer and "readily admitted being at the scene of the incident and admitted he tried to escape with his friends. [He] gave names of all the other suspects, although he denied taking part in the incident itself." There is not a scintilla of evidence to contradict this minor's denial. Moreover it is questionable, under the terms of the statute as it now reads, whether the commission of an offense, if established, is in and of itself sufficient evidence to furnish a ground for detention. (Cf. Report of the Governor's Special Study Commission on Juvenile Justice, pt. I, § IV, Recommendations 23, 24 and 25, and comments pp. 41-45, and pt. II, ch. IV, pp. 70-83, particularly, "Juvenile Court Law Provisions Pertaining to Detention," pp. 72-73; and *In re Pierce, supra,* 127 Cal.App. 773, 777.)

In any event, where, as here, the minor has been relinquished to the custody of his parent and remained there for a period of over five weeks there should be some evidence to show new or previously undiscovered facts relating to one of the grounds for detention in order to justify such an order. The case is analogous to those wherein there has been an arbitrary increase in the amount of bail. In *In re Aydelotte* (1929) 97 Cal.App. 163 [275 P. 510], the following appears: "There were no facts in the record with relation to the charge against the defendant which had not been in the record when the $2,500 bond was ordered by the court and given by the defendant with the court's approval. From these facts, in

connection with the fact that the trial was postponed, it follows that the action of the court in requiring the defendant to give bail in a larger sum was arbitrary and was not within its power as defined by section 1289 of the Penal Code." (97 Cal.App. at p. 165; and see *In re Berman* (1930) 105 Cal. App. 270, 272 [287 P. 373].) In like vein it has been recognized that the right to bail is not affected by reason of suggested insanity (*In re Gentry* (1962) 206 Cal.App.2d 723 [24 Cal.Rptr. 208]; *In re Westcott* (1928) 93 Cal.App. 575-577 [270 P.247]), sexual psychopathy (*In re Keddy* (1951) 105 Cal.App.2d 215, 218-221 [233 P.2d 159]), or inebriacy (*In re Henley* (1912) 18 Cal.App. 1-5 [121 P. 933]). In *Gentry,* the court stated: "A person charged with other than a capital offense is entitled to bail as a matter of right prior to conviction (Pen. Code, § 1271) and that right is not affected by the fact that a plea of not guilty by reason of insanity has been entered (*In re Westcott,* 93 Cal.App. 575, 576 [270 P. 247]) unless '[a]s was suggested in *In re Henley,* 18 Cal. App. 1 [121 P. 933], although for the safety of the individual or protection of society it might in some instances be proper to deny bail, this should not be done without a showing being made of such facts as justify it.' (*In re Westcott, supra,* p. 577. See also *In re Keddy, supra,* p. 221.) There has been no such showing in this case." (206 Cal.App.2d at p. 724.)

The report of the Governor's Study Commission contains the following pertinent comment: "Some probation departments and law enforcement agencies defend their detention practices on the grounds that detention is of therapeutic value to the child. Others frankly admit that children are detained because of the convenience in conducting investigations and administering psychological examinations. While detention *may* have a therapeutic effect in selected cases, in the Commission's view, it is neither the function of law enforcement agencies nor probation departments to use it for this purpose. In our opinion, this is clearly and unmistakably a judicial responsibility which must be arrived at after juvenile court jurisdiction has been established." (Report of the Governor's Special Study Commission on Juvenile Justice, pt. I, p. 42.)

The following comment from *In re Contreras, supra,* 109 Cal.App.2d 787, although directed to proceedings held on the merits and for determining the disposition of a ward are equally pertinent to the detention proceedings: "Surely, a minor charged in the juvenile court with acts denounced by

law as a felony does not have lesser constitutional, statutory rights or guarantees than are afforded an adult under similar circumstances in the superior court. The record herein is barren of sufficient legal evidence to establish even reasonable or probable cause of the minor's guilt, and he should have been returned to his family, an institution that has ever been recognized as the foundation of society, and the sanctity of which the law has always upheld. A charge against a minor resulting in his removal from the custody of his parents cannot be regarded lightly, and such action is not justified unless facts be shown by evidence, the verity of which has been carefully and legally tested. We find nothing in the juvenile court law that attempts to impose any unlawful restraint upon personal liberty. In practically all of the cases affecting juvenile court proceedings that have come to our attention, the minor has admitted the charge lodged against him and the only problem presented to the court was how to best guide and control the minor with a view to his rehabilitation and further development. In the case at bar, however, the minor emphatically and at all times denied his alleged delinquency. Under such circumstances his liberty should not be taken from his [*sic*] until his guilt of the charges lodged against him was established by legal evidence. That however praiseworthy, according to the viewpoint of the individual, may be the motives of the juvenile court, that tribunal may not impinge upon the legal rights of one brought before it is emphatically set forth in *In re Tahbel,* 46 Cal.App. 755, 760, 761, 762, 763 [189 P. 804]; in *In re Hill, supra,* pp. 26, 27, 28 [78 Cal.App. 23 (247 P. 591)]; and *In re Rauch,* 103 Cal. App.2d 690, 698 [230 P.2d 115]. In the final analysis the juvenile court is a judicial institution.'' (109 Cal.App.2d at pp. 790-791.)

The record here provokes use of the following comment: "While proceedings in the juvenile court are for the welfare of boys and girls, still they deprive individuals of liberty. Therefore, the administration of this law must conform to constitutional guarantees of due process of law. From the record . . . it is hard to say who testified, who evaluated the testimony, if any, or who made the findings; or whether or not we have here some sort of assembly-line administration of the juvenile court law.'' (*In re Alexander* (1957) 152 Cal. App.2d 458, 461 [313 P.2d 182].)

The detention order is without support in the record and the minor must be released from custody thereunder.

"(e) The court failed to make the findings of fact required by Welf. & I. C. § 636."

From what appears above it is apparent that the conclusionary findings found in the order endorsed on the request for detention[6] cannot support the detention in the absence of evidence of one of the grounds required by law. Nevertheless, if such evidence did exist, it could not be said as a matter of law that the findings were inadequately expressed. In reference to the questions of wardship and removal from custody the court said in *In re Corrigan, supra*: "Appellant makes the incidental argument that she was entitled to specific findings on the several allegations in the petitions. The juvenile court law does not require the making of specific findings. The juvenile judge did, however, make a written finding in each of these cases in the following language: 'The court finds that *all* of the allegations of the petition are true. . . .' (Italics added.) This general finding is sufficient to show the facts upon which the court exercised its jurisdiction to declare the minor a ward. (Welf. & Inst. Code, § 735; *In re Ortiz,* 74 Cal. App.2d 810, 814-815 [169 P.2d 664].) In support of the portion of the judgment depriving appellant of the custody and control of each of the children the court found that 'the welfare of the minor requires that her [or his] custody be taken from both parents.' This finding is in strict compliance with section 739, subdivision (d), Welfare and Institutions Code. (*In re Ortiz, supra,* p. 815; *In re Holt, supra* [121 Cal. App.2d 276 (263 P.2d 50)].)'" (134 Cal.App.2d at p. 757; see also *In re Steiner, supra,* 134 Cal.App.2d 391, 396-399; *In re Gutierrez, supra,* 46 Cal.App. 94, 96.)

"(f) The court abused its discretion, if any it had, in ordering the minor detained."

Judicial discretion is conferred upon the court by the provisions of sections 632-639, inclusive, which provide for detention hearings. The standards for the exercise of this discretion are set forth in sections 635 and 636. It is an abuse of discretion to take judicial action in the absence of the existence of facts upon which such action must be predicated. (See 3 Witkin, Cal. Procedure (1954) Appeal, § 82, pp. 2243-2244.) The considerations outlined under "(d)" demonstrate

[6]The order recites: "the court having determined from the affidavit of the Probation Officer [see part "(a)," *supra,* for contents of the request for order of detention] and from other pertinent information that the continued detention of said minor . . . is necessary and proper; . . ."

that the court exceeded the bounds of its legal discretion in making the order of which complaint is made.

This court, heretofore, in connection with its order to show cause, released the minor to the parent or parents entitled to his custody. At the time of submission of this matter, the hearing on the merits had been continued and was still prospective, and that order of release was continued in effect. The petition is granted and the minor is ordered discharged from any detention under the purported order of detention of January 25, 1966.

Sullivan, P. J., and Molinari, J., concurred.